192392 Netcentrics Corporation v. United States. Mr. Nichols, whenever you're ready. Good morning. We're very happy to be in front of this court to help vindicate what we believe was a wrongful disparagement of Netcentrics integrity. Mr. Nichols? Yes, sir. This is Judge Wallach. I'll refer to employee A, and you know who that is, right? Yes, sir. Okay. Am I correct that in December 2018, your client identified employee A as a current employee? Yes, Judge. Okay. That was not true, was it? That is correct, but the CEO found that not to be a material fact at all to her, to the award decision. Keep going. Under DEL, this court must set aside the agency's disqualification of Netcentrics, the severest form of corrective action, because it was unreasonable under the circumstances and not rationally related to the underlying facts. Are you, this is Judge Proust, are you differentiating counsel, therefore, between the decision to rescind the contract award and the decision to disqualify your client from further competition? Is there a distinction to be drawn between those two actions? Because I didn't see you Maybe I missed it. I didn't see you tease out any compelling or resulting difference from those two separate actions. It's a good question, Judge. We believe that this court's decisions in PRC and in United Architecture say that even rescinding the where there was no deceptive intent, certainly disqualifying a contractor is inappropriate and also against the government's interest. PRC, you mean, are you referring to our opinion in planning, something called planning research? Yes, Judge. Thank you. I'm not sure about your, I think you're pretty much over-reading the holding in that case. In planning research, we held that the agency improperly failed to take corrective action in response to intentional material misrepresentation. We didn't address whether an agency has discretion to take corrective action in cases involving negligent material misrepresentation. So, I don't see it in this case. Are you aware of any other Federal Circuit case law that resolves that question? So, we read planning research and United Architecture 251F3-170 together. And in planning research, the Federal Circuit found, focused on the deceptive intent as reason to take corrective action, in our opinion. And in United Architecture, the court affirmed that corrective action should not occur where there was no deceptive intent. So, reading these two together, the only decision from the Federal Circuit, we see a distinction based on whether there is or is not deceptive intent. And in fact, the Court of Federal Claims in Northrop Grumman specifically found, applying planning research, specifically found that a contractor should lose its rights to a contract only when it makes a willful and egregious misrepresentation in its proposal. And we believe that that is the correct rule. But did you... I just wanted to follow up. I thought Judge Crow's question was a good one, which was, are you aware of any Federal Circuits that specifically address whether there has to be deceptive intent before an agency can exercise its discretion to take action when there has been, you know, a misleading or incorrect statement in a bid? It is a good question, and the answer is no. We're not aware of any decision by the Federal Circuit, and we think that's part of the reason for the split in the lower courts, is that different courts read planning research and United Architecture differently. We read them as making a distinction based on whether there is or is not deceptive intent, and the courts are split on this issue. We think this is why there are so many key personnel cases out there, dozens of these cases that have come up in the last 10 years, and deciding that issue once and for all would be very helpful for the government and for industry. You have... Just going back to the first... This is Judge Crow. Going back to the first point I was making, you're not making a separate argument for the rescission of the contract and the disqualification, right? In other words, you're not saying maybe you don't need deceptive intent for the first, but you would need it for the second for the following reasons. You haven't differentiated between the two in your briefing, have you? We've differentiated slightly. We believe that the right answer is what Northrop Grumman found, or what the Court of Federal Plans found in Northrop Grumman, that rescinding a contract and making a contractor ineligible for award should only occur where that contractor has sought to mislead the government. But we think that is even more so for disqualifying a contractor. It's the severest form of corrective action, and we believe that under Dell, it was irrational based on these facts. Well, let me ask you, what do you... What does it mean for misrepresentation to be material? It means that it affected the outcome of the evaluation decision. So, in this case, the CO specifically said that the misstatement that Mr. A continued to be a current employee was not actually material at all to their evaluation. They didn't care whether he was a current employee or not, so it was immaterial to their decision, whereas if... I'm misremembering the briefing and the decisions here. Yeah. There was no materiality with respect to the misrepresentations with regard to employee A's status in terms of his ready willingness to come back, how long he would be back, etc. Am I missing... What am I missing? Oh, I'll clarify, Your Honor. So, there were actually two supposed mistakes in the... Okay, so why don't we focus on the one that he had a one-year commitment and guaranteed immediate availability? That certainly is material and was material. If it had actually... And found to have been misrepresented. Correct. Yeah, that would have been material if, in fact, it were true. It, of course, wasn't true, as we now know, based on his subsequent declaration indicating that he had committed. He had originally committed. He never withdrew the commitment. Are we talking about the declaration that wasn't... that the judge didn't allow in? Well, two things. NetCentrix, during the inquiry, provided multiple statements saying that he had committed, he had never withdrawn his commitment, they believed he would return as he had done before, and then he subsequently confirmed that he had left NetCentrix with the impression that he would return, and, in fact, he was ready, willing, and able to return. That came through in his declaration, but the real focus here is... Let me ask you again. I guess I want to know, when you're citing to us as a basis for our making a change in this opinion, a declaration, my understanding is that declaration was not allowed in. Am I right? That's correct. Okay. So, unless we reverse the Court of Federal Claims ruling on your 60B2 motion, we're not going to be relying on Employee A's declaration, correct? So, Employee A's... Can you just give me a yes or no answer to that? Correct. Thank you. Go ahead. Okay. So, our point in raising the declaration is to... If, in fact, Mr. A's intent, not NetCentrix's understanding of his commitment, was important, that issue is really resolved by his very clear subsequent statements, but, more importantly, the CO never actually asked NetCentrix for a clear statement from him regarding his intent. What the CO did during her inquiry was ask NetCentrix about its understanding. It was NetCentrix's proposal. They asked about NetCentrix's understanding, but then, when actually making the determination, the CO sort of pulled a switcheroo and said, okay, well, that was NetCentrix's understanding, but you never gave me anything affirmative from Mr. A. She never asked for it, but that's the basis on which she made her determination, and we believe that was legal error as well. So, in the event that the relevant inquiry is Mr. A's intent, we believe the declaration... Well, we believe that NetCentrix's statement regarding his intent should have been sufficient, and the declaration certainly confirms their understanding, and that's where the declaration comes in. And this is, in my opinion, the real problem with this case. A lot of these key employee cases are bait-and-switch cases, where there's a discussion about what the contractor knew when it proposed somebody who didn't actually show up. In this case, there was no switch. NetCentrix proposed Mr. A, fully intended to have him perform the job, and he's confirmed that he was going to. So, what really comes into play is... Counsel, this is Judge Waller. Let's go to the nuts and bolts on Mr. A's... I'm sorry. I'm sorry. ...proposed evidence that was rejected by the court. How is that newly discovered evidence? It's newly discovered in the respect that Mr. A did not want to provide any statement in the context of a bid protest, because he did not want to endanger his current employment if this job did not materialize. It wasn't until he saw... ...that it set forth in that proposed statement. I'm sorry. Could you say that again, Judge? I said, was your client aware of the facts that were set forth in that proposed statement? The fact that he intended to return? I believe they were aware of that. And how is it newly discovered? Because it's evidence from Mr. A confirming his intent, which is the basis on which the CO actually made her determination. Did you subpoena him for a deposition? We did not subpoena him for a deposition, because in large degree, because the CO had never asked for his opinion until she made her determination, and then we received a letter of confirmation from him just days later, we believed that that would suffice. It wasn't until we saw the declaration from Mr. B mischaracterizing his commitment that he agreed to finally weigh in in the litigation. I must say, this is Judge Prost, I'm a little confused by your answer to Judge Wallach being the CO never asked for it. I mean, you're putting on a case here, and the heart of the case from beginning to end is the status and the future status of the particular individual. So I'm a little confused by your suggestion that in the absence of the CO aggressively asking for you to put on evidence to support your case, that sort of lets you off the hook. I don't know if you want to respond to that observation or not. Yes, I will. Thank you, Judge. Netcentrics interpreted every one of the CO's requests as asking for Netcentrics' understanding of his intent, and they answered every one of those requests. Our chart in our reply brief shows that. She never asked for any statement from Mr. A regarding his intent, and that's why they never want him to ask for that. They just described the basis for their belief, and so that's the distinction. Okay, thank you. We'll reserve the remainder of your time. Let's hear from the other side. Ms. Torres? Thank you, Your Honor, and may it please the Court. The trial court's judgment should be affirmed. Beginning with the argument related to the material misrepresentation standard, PRC does not state what Netcentrics relies upon it for. In PRC, this Court was reviewing a decision from the Board of Contract Appeals that had already found an intentional material misrepresentation. This Court in that case never set down a standard that only intentional material misrepresentations were sufficient to disqualify a contractor. In this Court's 2007 Blue and Gold decision, this Court considered the material misrepresentation standard and never stated intent was required. Well, Ms. Torres, let me ask you, this is Judge Crouse, let me ask you what I asked your friend on the other side, which is what does it mean for misrepresentation to be material? It means that the agency relied upon that misrepresentation. And here, as both the trial court and the contracting officer found, the agency relied upon several of Netcentrics offers in its proposal. For example, in its proposal to the government, Netcentrics indicated that it would be providing key personnel. And the agency relied upon that offer to award Netcentrics a strength. The agency also awarded Netcentrics a strength for the fact that it would be providing key personnel for one year. In addition, the agency awarded Netcentrics a strength for the fact that it was providing key personnel that had been incumbents, Your Honor. Mr. A, as well as another key personnel, were both incumbents that had been working on this requirement in previous contracts. So based on those offers from Netcentrics in its December 2019 final proposal, the government gave Netcentrics... Well, your friend points out repeatedly that at least one of the data points that you referred to, which involves whether he was a current employee, and that was not one of the bases upon which the contracting officer resolved this case. Is that correct? No, Your Honor. That is incorrect. The contracting officer actually did consider the current employment issue material. She discusses it when discussing Ms. Catliota's admission. This is in the record at 132.13. The contracting officer also discusses this admission related to the incorrect information about Mr. A on 132.18 of the record. So in those two places, the contracting officer is considering the fact that the current employment status was not accurate. As the trial court pointed out during oral argument, even Netcentrics counsel conceded that its failure to update Mr. A's resume was in hindsight a mistake. So the agency relied upon that. So Netcentrics is incorrect. The issue of Mr. A's employment status was not updated. As the trial court has recognized in commonly in other cases, this is something that offerers are responsible for. They are responsible to provide final corners of that final proposal in terms of evaluating the proposal for award. Your Honor, related to whether disqualification is inappropriate, this court has reached that issue in Impreza. There, the court found that when considering a material misrepresentation it is appropriate for an agency to decide on disqualification because, of course, this material misrepresentation constitutes violations of procurement integrity. I'd also like to address Netcentrics' claims related to Netcentrics' understanding. The understanding issue is actually raised in Ms. Catliota's certification. Your Honor, the contracting officer provided a very fulsome analysis of both the Catliota certification as well as the Walker Declaration, which were submitted on February 11. She devotes approximately six pages to a paragraph-by-paragraph analysis. Beginning with her inquiry on February 7, she asked for an understanding at the time of the Netcentrics' submission of its final proposal whether Netcentrics knew whether Mr. A would leave his current employment and the response that she received from Ms. Catliota was that Ms. Catliota stated only that, quote, Netcentrics' understanding that it would be able to make Mr. A immediately available. It was Netcentrics' understanding that it would be able to. The problem with that response, and this is on 132.13, is that it doesn't address the key issue of what Netcentrics knew and reasonably believed when it was submitting its final proposal. Another concern with Ms. Catliota's response that the contracting officer analyzed was when Ms. Catliota stated, quote, Netcentrics' intent was to rehire Mr. A. The contracting officer concluded that these responses were insufficient because references to Netcentrics' understanding and its intent to rehire Mr. A didn't confirm the key temporal issue, which is whether Netcentrics had a reasonable belief at the time that it submitted its final proposal back in December 2018 that it would be able to make Mr. A available. And the GAO, in dealing with this whole intent to hire, has rejected that an intent to hire is sufficient to avoid a material misrepresentation claim. And this is discussed in our papers. The GAO case is Henry Patricio Enterprises. As for Mr. Walker's declaration, this is another submission that Netcentrics relies upon. That another submission that Mr. Walker was another submission that the contracting officer devoted extensive analysis of, again, taking it paragraph by paragraph. In that submission, again, the contracting officer found that Netcentrics wasn't dealing with the key temporal issue of whether Mr. A was available for a final proposal submission. And in the record at 132.16, the contracting officer concluded that the Walker declaration failed to provide requested information, which went to her query as to all commitments that Mr. A had made to Netcentrics, showing that he intended to perform on the contract at the time, again, the key temporal issue, at the time that Netcentrics submitted its proposal back in December 2018. She concluded that Netcentrics had failed to, or Mr. Walker had failed to provide specific dates, which is what she asked for. And she also noted in the determination that Mr. Walker's declaration excluded precisely the dates that she was looking for, which is that December 3 key date, in terms of when Netcentrics filed or submitted its final proposal. So, based on these submissions, the contracting officer reasonably concluded there was missing important requested information. And one thing that Netcentrics in its briefing relies upon is the fact that Netcentrics happened to be talking, or its employees happened to be talking with Mr. A at various periods. And in common, the trial court rejected this notion that simply having discussions would be sufficient to show a reasonable belief that a key employee would be available, because those discussions are not definitive as to whether that key personnel would be available, pursuant to a proposal that promises that key personnel would be immediately available. Significantly, the GAO, which is a neutral body, asked Netcentrics for comparable information. In fact, the GAO went a step further in seeking a submission from Mr. A. In his presentation, Netcentrics counsel refers to one of those submissions, Your Honor, the trial court correctly applied this court's axiom decision in concluding that that letter of commitment was not before the contracting officer when making her decision, and thus could not be reviewed by the trial court. But even that submission, the letter of commitment, again, failed because it did not include a definitive statement from Mr. A that he, as of the time of final submission, on December 3, was available to, as the Netcentrics proposal offered, to begin contract performance immediately and for one year. Again, that's key, the one-year commitment that Netcentrics also promised the government. And as for the later October-November 2019 declaration from Netcentrics, that declaration also failed. Again, Your Honor is correct that those weren't allowed in, but since Netcentrics continues to rely upon that declaration, it's worth noting a key provision of the declaration which the trial court relied upon in her Rule 60B ruling, and that's paragraph 14 of this document, which says, quote, in the cyander, I cannot say for certain how I would have answered if Netcentrics had asked me for a letter of commitment in early December 2018, end quote. And that declaration appears at 20022. So it's this declaration... Finish your sentence. Your Honor, so this declaration, which is presumably Mr. A's best and final statement, does not show, does not state, that Mr. A was available as of December 3 to perform. Okay. Mr. Johnson, you've allocated three minutes for you to argue. So we'll hear from you. Thank you, Your Honor. In the quarter billion dollar procurement at issue, the agency was entitled to candor. Netcentrics did not provide that. I just want to touch on a few points. Can you just lower your voice? I'm sorry, this is Judge Prez. Could you just lower your voice? Oh, I'm very sorry. I want to start with the question of whether the current employee representation was material. Ms. Soros pointed to a number of places where the contracting officer discussed that in her determination, but the agency in its letter to Netcentrics informing it of the disqualification decision also expressly identified the current employee's statement as a material misrepresentation. That's at appendix 13-260. On unified architecture, which Mr. Nichols discussed in discussing this court's case law about the intent negligence issue, I wanted to point out that that is a non-precedential summary affirmance. So the court in that case did not issue a decision, much less a decision that wrestled with the intent negligence issue present in this case. On the question of whether the remedy here by the not to disqualify Netcentrics, first, Netcentrics has not made that argument. It hasn't been briefed, so it's forfeited. Also, this court in planning research itself favorably cited comptroller general authority from NRA Informatics saying that the submission of a material misstatement should disqualify the proposal. So in disqualifying Netcentrics, the contracting officer here at least was acting within the scope of her discretion, and that's supported by this court's recent decision in Dell Federal Systems, which say that contracting officers get deference on the scope of the corrective action that they take. And I just want to end with the fundamental principle that underlies the argument that negligence is the right standard, that deceptive intent should not be required, and that's that agency contracting decisions are entitled to deference, and that deference means that agencies should have the discretion to protect the integrity of their procurements from misrepresentations, and that should be even if the misrepresentations are negligent rather than intentional. With that, I'll yield the remainder of my time. Thank you. Mr. Wilson, I think you have several minutes remaining. Sorry, Mr. Nichols, I'm very sorry. Mr. Nichols. No problem. Thank you. Intervenor says that Netcentrics had a duty of candor. Netcentrics was entirely honest about Mr. A and the understanding it had from Mr. A, and in fact, as I mentioned, this is not a bait and switch case because they didn't switch him. He has confirmed that he was ready, willing, and able. What really happened is that the contracting officer disregarded the weight of the evidence regarding Netcentrics' reasonable belief that he would return, and in favor of pure conjecture that he wouldn't return, she jumped to a conclusion Complete your thought. That was against the weight of the evidence, and that was clear error. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.